616 A.2d 446

**Charles E. GARRETT**

v.

**BOARD OF EDUCATION FOR PRINCE GEORGE'S COUNTY.**

No. 999, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Dec. 1, 1992.

J. Marcus Slowiak, Annapolis, for appellant.

Andrew W. Nussbaum (Reichelt, Nussbaum, Brown, Dukes & LaPlaca, on the brief), Greenbelt, for appellee.

Argued before WILNER, C.J., and BISHOP and DAVIS, JJ.

BISHOP, Judge.

Appellant, Charles E. Garrett ("Garrett"), filed an emergency petition with the Workers' Compensation Commission (the "Commission") requesting the continuation of temporary total disability benefits ("TTD") and the computation of his disability retirement offset. Garrett's petition was denied. Garrett filed an appeal to the Circuit Court for Anne Arundel County. Garrett and Appellee, the Board of Education of Prince George's County (the "Board"), filed motions for summary judgment. After a hearing, the court

granted the Board's motion. Garrett filed a timely notice of appeal to this Court.

## Issue

Garrett presents one issue which we restate as follows: Did the circuit court erroneously grant the Board's motion for summary judgment after basing its calculation of a Section 9–610 offset on a retirement payout option which Garrett did not elect?

## Facts

The undisputed facts are supplied by the parties' Agreed Statement of the Case filed pursuant to Rule 8–207(b).

Garrett was injured in a work-related accident on August 28, 1986. The Board paid TTD at a rate of $273.00 per week ($1,183.00 per month) through April 1, 1991, and then terminated the benefits after Garrett applied for and received a Maryland State Disability Retirement from which he receives $846.32 per month.

At the time of his disability retirement, Garrett was presented with a list of options regarding payment of his retirement benefits. Garrett selected "Option II" which pays $846.32 per month and provides survivor's benefits and the possibility of purchasing health insurance for the beneficiary. Had Garrett selected Option IV, a single life annuity with no survivor's benefits and no possibility of purchasing health insurance for the beneficiary, he would have received $1,325.79 per month for life with no additional benefits. Garrett did not select Option IV because he desired Option II's broader benefits. Under the Maryland State Retirement and Pension System, Garrett could not change his election after receipt of the first payment.

On September 20, 1991, Garrett's Emergency Petition was heard by the Commission. On that date, Garrett was still temporarily totally disabled. The Commission found that Garrett was not entitled to further payment of TTD

because of the applicability of the offset provision of Md. Lab. & Empl.Code Ann. § 9–610(a) (1991).

The circuit court agreed with the Commission's finding. It held that for purposes of the offset provision of § 9–610(a), the amount payable under Option IV was the "benefit" paid to Garrett each month, even though he actually received a lesser monthly payment under Option II. Thus, Garrett was not entitled to further payment of TTD because benefits under the disability retirement exceeded the amount of TTD.

## *Discussion*

Section 9–610 of the Labor and Employment Article provides in pertinent part:

**Offset against other benefits.**

(a) *Covered employee of governmental unit or quasi-public corporation.*—(1) If a statute, ... regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9–201(2) of this title ..., *payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer* ... for payment of benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer ... shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

Md.Lab. and Empl.Code Ann. § 9–610 (1991) (emphasis added). Thus, if the monthly "benefit" paid Garrett exceeds his monthly TTD award, the Board's liability under Garrett's worker's compensation judgment is satisfied.

■ Before 1991, § 9–610 was located in Article 101 of the Annotated Code of Maryland. The relevant portion then read:

Whenever by statute ..., whether as part of a pension system or otherwise, any benefit or benefits are furnished employees ..., *the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer ... for any benefit under this article.* If any benefits so furnished are less than those provided for in this article the employer ... shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article.

Md.Ann.Code art. 101, § 33(d) (Supp.1990) (emphasis added). This section was revised and recodified in the new Labor and Employment Article. Although new language is used in § 9–610, its language was derived without substantive change from former § 33(d). *See* Md.Lab. & Empl.Code Ann. § 9–610 (1990) (revisor's note); *Office & Professional Employees Int'l Union, Local 2 v. Mass Transit Admin.,* 295 Md. 88, 101, 453 A.2d 1191 (1982) ("The notes or reports of a revisor or revision commission are entitled to considerable weight in ascertaining legislative intent."). Both parties agree that case law interpreting § 33 shall govern. Further, "[a] change in the phraseology of a statute as part of a recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Id.* at 100, 453 A.2d 1191. Thus, we shall consider the language of § 33 in determining the application of § 9–610 because changes were made only for the purposes of clarity and brevity. *See Welch v. Humphrey,* 200 Md. 410, 417, 90 A.2d 686 (1952).

Garrett argues that the amount of the offset against payment of TTD is the amount of money the claimant actually is receiving from the disability retirement pension—$842.67 per month in the case *sub judice.* Garrett contends the language of § 9–610(a)—such wording as "paid" and "to the extent of payment"—necessitates such a result.

The Board argues that the benefit paid to Garrett is not only the amount of his monthly retirement pension check, but also the death benefit which he elected to provide to a beneficiary. Although the actual payment will be made to a beneficiary upon Garrett's death, the Board contends it is nevertheless furnishing this benefit to Garrett within the meaning of § 9–610(a). Put another way, the Board contends Garrett's monthly benefit contains two components: (1) cash (the amount of the monthly check to Garrett), and (2) the value of the continued payments to Garrett's beneficiary. The Board places the value of the monthly benefit to Garrett at $1,325.79, the amount he would have received under Option IV.

■■■ "It has long been the policy of the General Assembly ... that an employee of the government shall not receive workmen's compensation benefits in addition to other benefits furnished by the employer accruing by reason of an accidental injury arising out of and in the course of employment." *Nooe v. Mayor of Baltimore*, 28 Md.App. 348, 349, 345 A.2d 134 (1975), *cert. denied*, 276 Md. 748 (1976). Since "workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort ..., the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed." Arthur Larson, *The Law of Workmen's Compensation* § 97.00 (1990). Therefore, by enacting § 9–610, the General Assembly expressed its desire "to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Frank v. Baltimore County*, 284 Md. 655, 659, 399 A.2d 250 (1979).

■■ The language of § 9–610 is the crux of this appeal. Former § 33(d) provided "the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer." The language was condensed and now reads "payment of the benefit by the employer satisfies, to

the extent of the payment, the liability of the employer." Garrett suggests this Court should employ a narrow construction to this language. As Garrett would have it, "payment of the benefit ... to the extent of payment" is limited to the monthly cash payment. We disagree.

 In reviewing the application of § 9–610 by the court and commission below,

we are mindful that our ultimate goal is to discern and effectuate the actual purpose of the legislature in enacting it. To reach that objective, we rely primarily upon the language chosen by the General Assembly to express its intention, although if ambiguity or uncertainty exists, the history surrounding the statute's adoption can be used as an aid in its construction. Moreover, in construing statutes, results that are unreasonable or inconsistent with common sense should be avoided whenever possible.

*Frank,* 284 Md. at 658–59, 399 A.2d 250 (citations omitted). After considering both the original and revised versions, we are satisfied that the Legislature did not intend an offset of only cash benefits paid to the employee. Rather, the Legislature intended that *all* benefits furnished to the employee, both monetary and otherwise, be used in calculating the offset.

Prior to July 1, 1992, the Annotated Code of Maryland provided:

Instead of the disability or service allowances payable under the aforesaid provisions, any member, before the first retirement allowance payment normally becomes due, may elect a retirement allowance *of equivalent actuarial value* in one of the optional forms set out in this subsection.

\* \* \* \* \* \*

Option 1. If a member dies before he has received in payments the present value of his retirement allowance as it was at the time of his retirement, the balance shall be paid to his personal representative or to the person he

has most recently nominated by written designation, acknowledged and filed with the board of trustees.

Option 2. When a member dies, his reduced retirement allowance shall be continued throughout the life of and paid to the person he has nominated by written designation, acknowledged and filed with the board of trustees at the time of his retirement.

Option 3. When a member dies, one half of his reduced retirement allowance shall be continued throughout the life of and paid to the person he has nominated by written designation, acknowledged and filed with the board of trustees at the time of his retirement.

Option 4. (i) If the retired member dies before the member has received in payments the value of the member's accumulated contributions as it was at the time of retirement, the balance shall be paid to the member's legal representatives or to the person or persons the member most recently nominated by written designation, duly acknowledged and filed with the board of trustees. . . .

Md.Ann.Code art. 73B, § 117(12)(a) (Supp.1991) (emphasis added). Section 117(12)(a) was repealed effective July 1, 1992, and § 4–409, a similar provision, was added to article 73B. *See* 1992 Md.Laws, ch. 131. Although § 4–409 contains substantive changes, those changes are inapplicable in the case *sub judice,* since the hearings below were conducted before § 4–409's effective date. Furthermore, the changes do not assist us in our disposition of the issue in this case. Thus, we consider only the language of § 117(12)(a). Clearly, it was the intent of the Legislature that each of § 117(12)(a)'s options would be actuarially equal. There is nothing in the record that indicates otherwise.

In *Morris v. Prince George's County,* 319 Md. 597, 573 A.2d 1346 (1990), the Court of Appeals interpreted the word "benefits" as it was used in Md.Ann.Code art. 73B, § 32(a) (Supp.1989). Section 32(a) provided:

If a member transfers from a retirement or pension system operated on an actuarial basis where accumulated contributions are deducted on all earnable compensation to a retirement or pension system where accumulated contributions are deducted on all earnable compensation, the member shall receive service credit in the system into which the member transfers for and in the *amount of benefits accumulated* in the system from which the member transfers. The transfer of credit shall occur upon the deposit, within 1 year of the member's transfer, of the total accumulated contributions to the member's credit in the annuity or other corresponding fund of the system from which the member transferred to the fund of the system into which the member transferred.

*Morris*, 319 Md. at 599–600, 573 A.2d 1346 (emphasis added). The question before the Court was whether "a transferee carries with him, to the second system, his actual years of service in the first system for the purpose of computing eligibility for retirement, or carries the years of service in the first system merely for the purpose of computing mandatory benefits under the second." *Id.* at 600, 573 A.2d 1346. In order to resolve this question, the Court considered the meaning of "benefits."

The trial judge ... thought that the conjunction of "service credit" and "benefits accumulated" in § 32(a) required him to conclude that "service credit is being used for the purpose, and only for the purpose, of calculating benefits of members in the transferee system." In reaching that decision, we believe he read "benefits" in an unduly narrow fashion.

The County assures us that the judge's concept of "benefits" was correct because statutory terms should be given their ordinary and natural meaning in the absence of legislative definition. Citing *Webster's Third New International Dictionary* 204 (1976), it asserts that the "ordinary and natural meaning" of the word "benefit" is "a cash payment or service provided for under an annuity, pension plan, or insurance policy." The difficulty is

that the definition quoted by the County is Webster's definition 3c. Definition 2a shows the word as synonymous with "ADVANTAGE, GOOD"—words that have a considerably broader connotation, and one that is not restricted to monetary payment. *See Random House Dictionary of the English Language* 194 (2d ed. 1987), which defines "benefit" as, among other things:

> 1. something that is advantageous or good; an advantage....
>
> 2. a payment or gift, as one made to help someone or given by a ... public agency.

If time served as a deputy sheriff can be counted towards eligibility for retirement as a police officer, it is certainly "[s]omething that is advantageous ...; an advantage...."

*Id.* at 605–06, 573 A.2d 1346 (citation omitted).

The use of the word "benefit" in § 9–610 refers to benefits paid (i.e, furnished) under Article 73B, the same article containing the statute at issue in *Morris.* In light of *Morris,* "benefit" in § 9–610 should be given the same broad construction. Clearly, under Option II, Garrett's benefits not only include receipt of a monthly check for $842.67, they also feature the continuation of monthly payments to a surviving beneficiary. There is no doubt that the latter is " '[s]omething that is advantageous ...; an advantage....' ". *Id.* Although it is not "paid" to Garrett, it is certainly a benefit "furnished" by the Board. To hold otherwise, would be to sanction a result the Legislature did not intend. Garrett would receive a windfall—the continuation of payments to his beneficiary without a corresponding decrease in § 9–610(a)(2) payments.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.