REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 781

September Term, 2015

BOARD OF EDUCATION OF PRINCE
GEORGE'S COUNTY

v.

JAMES BRADY

Eyler, Deborah S.,
Wright,
Harrell, Glenn T., Jr.
        (Retired, Specially Assigned),
                JJ.

Opinion by Harrell, J.

Filed: June 30, 2016

In 2011, Appellee James T. Brady, a mechanic employed by Appellant, the Board of Education of Prince George's County (the "Board of Education"), was injured on the job. He remained absent from his position for sixteen and a half months before he retired on accidental disability retirement. During his absence, Brady elected to use his accrued paid personal and sick leave, rather than seek temporary total disability ("TTD") payments afforded under the Workers' Compensation Act. After a proceeding in front of the Workers' Compensation Commission on Brady's claim for permanent partial disability payments, where Brady was awarded a permanent partial disability award, the Commission granted the Board of Education an offset against the award for the Board's prior leave payments to Brady based on its interpretation of Maryland Code (1991, 2008 Repl Vol), Labor and Employment Article, § 9-610 ("L&E"). The Circuit Court for Prince George's County reversed this offset, leading to this appeal. The question before us is whether the Board of Education is entitled to an offset under L&E § 9-610 because Brady elected to use his personal and sick leave rather than avail himself of Workers' Compensation TTD benefits. For the following reasons, we hold the Board of Education is entitled to the offset and reverse the judgment of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

On 8 April 2011, Brady injured his neck and right shoulder in a workplace accident. The diagnosis was that he suffered two herniated cervical discs. The initial treatment did not alleviate Brady's injuries. He was referred to a neurosurgeon, who performed a two-level, anterior cervical fusion. Following this surgery, Brady was

unable to return to his position because he could not perform physically the duties of a mechanic. He retired on service-connected disability on 1 July 2013.

Brady worked under a collective bargaining agreement between the Board of Education and his union, Local 2250 of ACE/AFSCME. Article four of the contract contained specific provisions on leave benefits, including accrued leave and workers' compensation benefits. The contract included a provision that entitled Brady to full pay (in the form of TTD leave) for an initial period of ninety working days.[1] This leave was in lieu of any other benefits, including his accrued personal sick leave.

He received this disability pay for the requisite ninety days and, on 14 February 2012, when it expired, Brady was obliged to select how he would proceed as he was still unable to perform his job. He was presented with two options: remain on leave with pay status, which would grant him his full wages and current benefits, or pursue TTD benefits under the Maryland Workers' Compensation Act. In a letter from Diane Mullin-Fines, on behalf of the Board of Education, Brady was informed that if he opted for the "on leave with pay" status, "[i]n return for the ability to maintain the benefits . . . [he] waive[d his] right to receive direct payment of [TTD] benefits from the Third Party Administrator."

---

[1] Section 16 of Article four provides specifically:

A permanent or probationary employee of the Prince George's County Public Schools who is temporarily disabled in line of duty shall receive full pay for the period of his disability up to ninety (90) working days without charge against his or her annual or sick leave beginning with the first day of disability [subject to additional conditions not present in Brady's case].

2

He elected to remain on leave with pay status, which afforded him his full salary, but this option required him to use his accrued sick leave. As explained by Brady's counsel, Brady "had accrued a good amount of leave. . . [a]nd up until the time of his retirement on July 1, 2013, he was paid essentially out of his own leave pocket." Being unable to perform physically his job, Brady applied subsequently for Accidental Disability Retirement. He began to receive Accidental Disability Retirement benefits on 1 July 2013 at the rate of $865.65 per week after he retired formally from his position as a mechanic for the Board of Education.

On 1 April 2014, the Workers' Compensation Commission considered the employer's issue regarding the offset provision in L&E § 9-610. After a hearing, a Commissioner granted to the Board of Education the right under L&E § 9-610 to offset the payment of Brady's full wages under his accrued sick leave that he received between 15 February 2012 and 1 July 2013 (the "gap period"). On 22 April 2014, the Workers' Compensation Commission issued its order finding that "as a result of the accidental injury sustained on April 8, 2011 the claimant was paid disability leave (in lieu of temporary total benefits) from September 26, 2011 to February 14, 2012 inclusive, and paid sick leave (in lieu of temporary total benefits) from February 15, 2012 to June 27, 2013." The Commission provided further:

> Ordered that the above named employer [Board of Education for Prince George's County] and above named insurer pay unto the above named claimant [James T. Brady], compensation for permanent partial disability. . . beginning February 15, 2012, for a period of 333 weeks pursuant to the provisions of Section 9-630 of the Labor and Employment Article; subject to a complete set-[o]ff in accordance with Section 9-610. It is further ORDERED that from the Subsequent Injury Fund the claimant

3

shall be paid compensation for permanent partial disability . . . pursuant to the provisions of Sections 9-802 and 9-804 of the Labor Article; subject to a complete set-off in accordance with Section 9-610.

The award of $705 per week for 333 weeks was a permanent partial disability award.

Brady appealed to the Circuit Court for Prince George's County. A hearing was held on 29 May 2015 to consider cross-motions for summary judgment filed by the litigants. Brady argued that his earned leave was "proprietary" and his decision to use it should not be considered as receiving benefits similar to the benefits under Workers' Compensation laws. During the circuit court's hearing, he observed that the Board of Education "saved more than $23,500" because it did not have to pay him upon retirement for his unused sick leave and annual leave.[2]

The Board of Education argued that it was settled "that when there's a single cause such as the workplace accident here, which is the basis of the compensation such as an accidental disability retirement, the County, in this case the Board of Education or whatever governmental entity is involved, is entitled to an offset for the period of payment of those benefits." Further, the Board maintained that, had no accident occurred and Brady retired without a workplace disability, he would have received only payment

---

[2] The $23,500 was calculated by Brady's counsel under the terms of the collective bargaining agreement with the County.

for thirty days of accrued sick and personal leave, under the collective bargaining agreement.[3]

The parties waived further proceedings in the circuit court and preserved their right to appeal, but agreed that the decision on the summary judgment motions would constitute a final order in the circuit court. On 2 June 2015, the circuit court entered an order granting judgment in favor of Brady, offering no elaboration as to its reasoning for this conclusion. The Board of Education appealed timely to this Court.

**QUESTION PRESENTED**

---

[3] As noted by Brady's counsel, Delfrieda Hudson, Director of Payroll Services for Prince George's County Public Schools, in her deposition, stated a different calculation for sick leave upon retirement:

> Q. Now, when an employee retires and has in their account unused sick leave, how, if at all well – what happens to that leave?
>                                         . . .
> A. That's in section six. First paragraph, upon retirement, they shall receive three-tenths of unused sick leave not to exceed their full pay up to a maximum of 80 days for 11-month employees or 102 days for 12-month employees.

Section six of the collective bargaining agreement states specifically:

> Upon retirement in Prince George's County, a classified employee shall receive payment for three-tenths of his or her unused sick leave, not to exceed full pay for up to a maximum of eighty (80) days for ten-month employees, eighty-six (86) days for eleven-month employees, one hundred two (102) days for twelve-month employees, or thirty (30) days of accumulated annual leave, whichever is greater.

If Brady had elected TTD over his accrued leave, he would have been entitled to only 102 days of unused leave upon his retirement.

Appellant presents one question for our consideration, which we have rephrased for the sake of clarity:

> Did the circuit court err by granting Brady's motion for summary judgment, thus overruling the Commission's decision that the Board of Education, was entitled to an offset for benefits paid from 15 February 2012 to 1 July 2013 pursuant to Maryland Code (1991, 2008 Repl Vol), Labor and Employment Article, § 9-610 ("L&E")?

For the following reasons, we hold that it was error for the circuit court to give judgment to Brady and overrule the Workers' Compensation Commission's Order as to the off-set. We reverse its judgment.

## STANDARD OF REVIEW

The "purpose of summary judgment is to determine whether there are facts in dispute that must be resolved through a more formal resolution process, such as a trial on the merits." *Hines v. French*, 157 Md. App. 536, 549, 852 A.2d 1047, 1054 (2004) (citation omitted). Under Maryland Rule 2-501(f), a circuit court shall grant summary judgment "in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

Viewing the facts in the light most favorable to the non-moving party, we "'are first concerned with whether a genuine dispute of material fact exists' and then whether the movant is entitled to summary judgment as a matter of law." *Hines*, 157 Md. App. at 549, 852 A.2d at 1054 (citation omitted). If, however, "there is no dispute of material facts, then our role is to determine whether the trial court was correct in granting summary judgment as a matter of law. Whether summary judgment is properly granted

6

as a matter of law is a question of law and therefore review of the granting of summary judgment is *de novo*." *Montgomery Cnty. v. Soleimanzadeh*, 436 Md. 377, 398, 82 A.3d 187, 200 (2013) (citation omitted).

In the present case, there being no genuine dispute as to a material fact, we review the circuit court's judgment for its legal correctness, with no deference paid as a matter of course.

## DISCUSSION

### I. Contentions

The Board of Education contends that L&E § 9-610 entitles it to a complete offset of the sick leave it paid to Brady (treating it as the equivalent of TTD payments made under the Workers' Compensation statute) against the permanent partial disability award granted him by the Commission. Additionally, the Board of Education argues that the Commission finding of a "Permanent Partial Disability" as of 15 February 2012 should not affect the offset or credit due to the Board. Brady responds that the Board of Education was not entitled to an offset because his right to leave benefits for the permanent loss of wage earning capacity is "patently dissimilar" to temporary total disability benefits. He states that "this case is not about an excessive or duplicative payment. . . rather it is about the differences in temporary total disability and permanent partial disability benefits under the law."

### II. L&E § 9-610: Offset against other benefits

It is not disputed that the Board of Education is subject to the provisions of the Labor and Employment Article of the Maryland Code or that Brady is a protected

7

employee. Thus, the question for this Court is whether the Board of Education is entitled

to an offset for the monies paid to Brady while he was on disability sick leave. Under

traditional "wage-loss" legislation, the prevailing view was:

> Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit.

*Newman v. Subsequent Injury Fund*, 311 Md. 721, 726-27, 537 A.2d 274, 276-77 (1988).

This appeal involves specifically L&E § 9-610, which provides in pertinent part:

> (a)(1) Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

Under a related section, if ordered by the Workers' Compensation Commission, the

Board of Education would be entitled also to an offset or credit "against an award for

permanent partial disability benefits for: (1) any vocational rehabilitation benefits

previously provided to a covered employee; or (2) any temporary total disability benefits

previously paid to a covered employee." L&E § 9-610.1.

8

Exploring relevant legislative history, the Court of Appeals explained that the purpose of L&E § 9-610 is "to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Blevins v. Baltimore Cnty.*, 352 Md. 620, 625, 724 A.2d 22, 24 (1999) (citing *Frank v. Baltimore Cnty.*, 284 Md. 655, 659, 399 A.2d 250, 253 (1979)).[4] The Legislature intended "to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees." *Blevins*, 352 Md. at 625, 724 A.2d at 24 (citing *Frank*, 284 Md. at 661, 399 A.2d at 254). Since enactment of the provision, the meaning of the word "benefit" and the application of "similar benefits" has been applied broadly. *See Garrett v. Bd. of Educ. for Prince George's Cnty.*, 94 Md. App. 169, 179, 616 A.2d 446, 451 (1992) (explaining that the meaning of "benefit" should be given a broad construction). This broad application is supported by the notion that *"all* benefits

_____

[4] The language of § 33, the provision under analysis in *Frank v. Baltimore County*, 284 Md. 665, 399 A.2d 250 (1979) and the predecessor to L&E § 9-610, provided:

> Whenever by statute. . ., whether as part of a pension system or otherwise, any benefit or benefits are furnished employees. . ., the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer. . . for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer. . . shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article.

*Garrett v. Bd. of Educ. for Prince George's Cnty.*, 94 Md. App. 169, 173-74, 616 A.2d 446, 448 (1992) (citing Md. Code Art. 101, § 33(d) (Supp.1990)). Section 33 appears to us to be similar substantially to L&E § 9-610.

9

furnished to the employee, both monetary and otherwise, be used in calculating the offset." *Garrett*, 94 Md. App. at 176, 616 A.2d at 449 (emphasis in original).

When the respective benefits paid are dissimilar to TTD, the setoff provision under L&E § 9-610 would not apply typically. *See Newman*, 311 Md. at 728, 537 A.2d at 277 (applying § 33(c)). Because, however, "statutory language changes in Maryland also point out that we will not be bound to one philosophical concept in compensating our injured workers, [we] tend mercurially to move more by a sense of justice than by economic philosophy." *Oros v. City of Baltimore,* 56 Md. App. 685, 691, 468 A.2d 693, 696 (1983). The question of whether the second payment was in the nature of the first is important to the analysis, but is not the sole point of examination as we are guided also by this sense of justice.

As with traditional workers' compensation, the Court of Appeals explained that these benefits in Maryland are:

> facets of "an overall system of wage-loss protection," an underlying principle of which "is to restore to the worker a portion of wages lost by physical disability, unemployment, or old age." Although two or more causes of wage loss may coincide, the benefits "need not cumulate," we held, "for the worker experiences but one wage loss."

*Blevins*, 352 Md. at 639, 724 A.2d at 31(internal citation omitted). Thus, "the scheme that unmistakably emerges is that the General Assembly wished to provide only a single recovery for a single injury for [] employees covered by both a pension plan and workmen's compensation." *Blevins*, 352 Md. at 639, 724 A.2d at 31 (citing *Frank*, 284 Md. at 659, 399 A.2d at 253). This is evident in the Court's conclusion that alternative benefits could fulfill the required payments to be made to an employee:

10

> If the alternative benefit equals or exceeds the workers' compensation benefit otherwise payable, the set-off is complete, and the employer's obligation to pay the workers' compensation benefit is fully discharged. If the workers' compensation benefit exceeds the alternative benefit, the employer must pay the difference, as determined by the Workers' Compensation Commission.

*Blevins*, 352 Md. at 622-23, 724 A.2d at 23.

*Blevins* confronted the issue of "whether the set-off applies to workers' compensation benefits awarded *after* a county employee retired and began receiving disability retirement benefits pursuant to the county's employee retirement plan but for a period *preceding* the effective date of the employee's retirement." *Blevins*, 352 Md. at 623, 724 A.2d at 23. After the workplace injury, the employee continued to work full time and suffered no lost wages, which precluded him from receiving TTD, but he did receive accidental disability retirement benefits upon retirement. Prior to retiring, the employee filed for workers' compensation benefits:

> In an order entered on February 23, 1996, the Workers' Compensation Commission declined to award any benefits for temporary total disability, on the ground that there was "[n]o compensable lost time," but it did award permanent partial disability benefits, based on a 20% industrial loss of use of the body by reason of the neck and back injuries, in the amount of $170 per week. The Commission's order specified that the weekly benefit be paid for the period of January 22, 1994 through November 16, 1995 and provided that "thereafter any permanent partial disability due and payable is offset by claimant's weekly pension benefits of $1,038.25."

*Blevins*, 352 Md. at 623-24, 724 A.2d at 23. The county sought to have the entire amount offset, including the permanent partial disability benefits awarded to the employee before his retirement. Permanent partial disability benefits, however, are "lost earning capacity benefits," not "wage loss" benefits. This distinction makes the two different for purposes

11

of L&E § 9-610.  The presented argument in *Blevins* for the offset relied on *Frank v. Baltimore County*:

> [B]ecause the Commission "awarded [the employee] workers' compensation benefits from the date of his injury forward, into the period of retirement during which [the employee] receive[d] disability benefits," there was "a substantial period of overlap of benefits."  Under *Frank,* it held, "the entire workers' compensation award should have been compared to the entire disability retirement award, irrespective of time frame."

*Blevins*, 352 Md. at 626, 724 A.2d at 25 (citing *Frank*, 284 Md. at 661-63, 399 A.2d at 254-54).  The Court of Appeals disagreed and held that the offset did not apply in *Blevins* because the employee was not receiving duplicate benefits for one injury:

> The workers' compensation benefits were awarded for a weekly period prior to his retirement, when he was not receiving and was not entitled to receive any offsetting retirement benefits. The fact that the actual award of workers' compensation benefits or their payment came after his retirement is of no consequence. There was no overlap, as found by the Court of Special Appeals.

*Blevins*, 352 Md. at 627, 724 A.2d at 25.

That is essentially the same issue that we are confronted with here.  Brady was absent from his job for sixteen and a half months before he retired.  He was awarded permanent partial disability under L&E § 9-630 from the Workers' Compensation Commission because his disability had become permanent.  Prior to this permanency

12

determination, Brady was receiving his accrued sick leave, which equates to TTD benefits under workers' compensation laws.[5]

Although Brady's sick leave, as a form of wage loss protection, was not a benefit similar to permanent partial disability, a lost-earning capacity benefit, an offset should still apply. Because the award for permanent partial disability is to be "paid in addition to and consecutively with compensation for a temporary total disability" pursuant to L&E § 9-631, Brady would not start to receive the permanent partial disability award until after he ceased receiving TTD benefits (or in this case, the similar sick leave benefits). This Court has held that "the period of temporary total incapacity should not include any part of the period wherein the incapacity has become permanent." *Phuonglan Ngo v. CVS, Inc.*, 214 Md. App. 406, 424, 76 A.3d 499, 509 (2013) (citation omitted).

In its initial award of compensation and the first amended award, the Workers Compensation Commission provided as the effective date for the start of Brady's permanent partial disability 15 February 2012.[6] If, in fact, his disability had become

---

[5] The sick leave and TTD benefits are of the same nature in that they are similar wage loss protections. *See Oros v. City of Baltimore,* 56 Md. App. 685, 692, 468 A.2d 693, 696 (1983).

[6] In the Workers' Compensation Commission's Second Amended Award of Compensation (entered on 13 July 2015, apparently in response to the circuit court's 2 June 2015 order), the Commission explained that it determined "that due to an administrative error, the first Amended Award of Compensation of the Commission did not specify the date that the offset was to begin." It continued that sick leave was not a benefit similar to permanent partial disability and that the "offset, therefore, does not begin until [Brady] begins receiving disability retirement benefits on July 1, 2013." This Second Amended Award was reserved pending our decision in this case.

(Continued…)

13

permanent on 15 February 2012, then he would not be entitled to TTD benefits after that date, a position which Brady conceded in his brief before this Court.[7] Thus, what Brady is asking the Court to allow during the gap period is a double-dipping that was not authorized by the statute or available under Maryland appellate courts' interpretation of the workers' compensation laws.

In *Oros v. City of Baltimore*, the employees were "paid full sick leave salary by the City [and t]hose salary-continuation payments served as a full set-off against the awards of temporary total disability." *Blevins*, 352 Md. at 640, 724 A.2d at 31 (explaining *Oros* holding). When the employees sought permanent partial benefits, the City "attempted to set off the additional one-third that it paid during [the TTD] period against the permanent partial disability benefits." *Blevins*, 352 Md. at 640, 724 A.2d at 31-32. This argument was based on the legislative intent "to preclude double-dipping

---

(…continued)

[7] On page 9 of his brief, Brady states "Commissioner Godwin found that permanent partial benefits were to begin on February 15, 2012. That date was therefore the end of the temporary total disability benefit period." It was further conceded that permanent partial benefits were not payable after 1 July 2013 under L&E § 9-610.

Once Brady retired on 1 July 2013, he began to receive his accidental disability retirement. Disability pensions and workers' compensation benefits are considered to be similar benefits under L&E § 9-610. *See Newman v. Subsequent Injury Fund*, 311 Md. 721, 728, 537 A.2d 274, 277 (1988) (applying § 33(c)); *see also Oros v. City of Baltimore,* 56 Md. App. 685, 692, 468 A.2d 693, 696 (1983) (explaining that "by reason of [the] disability retirement election[,] the disability compensation benefit is "similar" in every sense to that of a disability pension [and t]he election to retire mooted whatever lost earning capacity purpose the compensation benefit may originally have contemplated").

14

into the same pot of comparable benefits." *Blevins*, 352 Md. at 640, 724 A.2d at 32 (citing *Oros,* 56 Md. App. at 694, 468 A.2d at 697).

In *Oros*, the City was not allowed to offset that additional payment made previously because "sick leave benefits, which were in the nature of wage-loss protection, were not comparable to permanent partial disability benefits, which compensated not for wage loss but for loss of earning capacity." *Blevins*, 352 Md. at 640, 724 A.2d at 32 (citing *Oros,* 56 Md. App. at 694, 468 A.2d at 697).

During the time that Brady was on leave from his position as a mechanic for the Board of Education, under his election, he received his full wages using accrued sick leave instead of available TTD benefits afforded under Workers' Compensation laws. At the time he made this election, Brady was entitled to TTD benefits.[8] When, however, the Workers' Compensation Commission determined that his disability became permanent on 15 February 2012, Brady had been paid already TTD benefits in the form of his sick leave during that "gap" period. Additionally, Brady received more money by using his leave than he would have received under any lawful award for permanent partial disability, not unlike the situation present in *Oros*. The difference here is that the Board

---

[8] During the period that he would have been on TTD, Brady elected one of two options provided for in his union-negotiated contract. Brady cannot go back now and attempt to receive the other option as his sick leave and TTD benefits offset under workers' compensation laws. The proprietary interest Brady claims to have in his sick and personal leave does not affect the Board of Education's entitlement to an offset because he made an apparently tactical decision to elect to take his leave over seeking TTD payments. Additionally, as explained in footnote 3, Brady was not entitled, upon retirement, to the cash value of every day of his accrued sick leave.

15

of Education is not asking to use the money paid already to offset Brady's post-retirement permanent partial disability (which is already offset under L&E § 9-610). The Board of Education is asking that it not be required to pay Brady twice for the same injury because the two overlap.

The Court of Appeals concluded previously that when the alternative benefit exceeds what an employee would have received from workers' compensation benefits, the employer is not obligated to pay additional funds to the employee and the set-off is "complete." *Blevins*, 352 Md. at 622-23, 724 A.2d at 23. That is what happened here. The alternative benefit Brady received in the form of his full wages exceeded what he would have received under any workers' compensation award. To refuse the Board of Education an offset of these funds would go against the Legislature's intent that an injured employee is entitled to a single recovery for a single injury. The offset pursuant to L&E § 9-610 does not start until 1 July 2013, the date of Brady's retirement, but we hold that the Board of Education is entitled to a complete offset of the funds paid to Brady for the "gap" period. Thus, we reverse the judgment of the circuit court and remand with instructions to remand the case to the Commission for entry of an amended order consistent with the views expressed in this opinion.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTION TO ENTER AN ORDER REMANDING THE CASE TO THE WORKERS' COMPENSATION COMMISSION FOR ENTRY OF AN AMENDED ORDER CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

16