GUS T. TSOTTLES *v.* MAYOR AND CITY COUNCIL OF
BALTIMORE ET AL.

[No. 1248, September Term, 1982.]

*Decided June 9, 1983.*

The cause was argued before WEANT, BISHOP and ALPERT, JJ.

*Edward J. Glusing, Jr.,* for appellant.

*John J. Carlin, Assistant Solicitor of Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor of Baltimore City,* and *Sheldon H. Press, Chief Solicitor of Baltimore City,* on the brief, for appellee Mayor and City Council of Baltimore. *Sophia L. Swope, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee Subsequent Injury Fund.

WEANT, J., delivered the opinion of the Court.

Section 33 of the Maryland Workmen's Compensation Act, *Md. Code* Article 101, attempts to prevent double payment from the public treasury to civil servants for an injury arising out of the employment relationship by providing that government employees covered by both a pension plan and workmen's compensation are entitled to but a single recovery for a single injury. *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979), *Mazor v. Dep't of Corrections,* 30 Md. App. 394, 352 A.2d 918, *cert. denied,* 278 Md. 727 (1976), *Nooe v. Mayor and City County of Baltimore,* 28 Md. App. 348, 345 A.2d 134, *cert. denied,* 276 Md. 748 (1975). We are faced with the dilemma of whether the § 33 (c) setoff, in order to be applicable, requires that the workmen's compensation benefits and the pension benefits be provided by, or traceable to, the same governmental employer.

Gus T. Tsottles was employed by the Baltimore City Department of Education as a social studies teacher in 1952. Out of and in the course of his employment, he sustained accidental personal injuries on 28 February 1966 and 14 May 1979. The combined effect of these accidents resulted in his being retired under the State of Maryland Retirement System. Appellant began receiving retirement benefits from the State on 1 April 1980 at a monthly rate of $1,247.48.

On 17 February 1981, the Workmen's Compensation Commission found appellant to have a sixty percent permanent partial disability, thirty percent of which was attributable to the 1979 accidental injury and thirty percent of which was attributable to the 1966 accidental injury. The Commission awarded weekly benefits of $74.00. The Mayor and City Council of Baltimore, as employer and self-insurer, was ordered to make such payments beginning 5 September 1979 not to exceed a total of $11,000.00. The Subsequent Injury Fund was ordered to make payments at the same rate to commence upon final payment of compensation benefits due from the employer. The Subsequent Injury Fund's liability was capped at $7,350.00.

After a rehearing at which the award was affirmed, the employer and Subsequent Injury Fund both filed motions for summary judgment in the Circuit Court for Baltimore City. Those motions were granted, reversing the award of the Workmen's Compensation Commission on the grounds that, because the pension benefits exceeded the compensation benefits, the employer and Subsequent Injury Fund were entitled to a full setoff under § 33 (c) which extinguished their liability. Appellant contends summary judgment was improperly granted in light of the factual question of whether the State Disability Retirement Benefits were traceable to the City of Baltimore. What appellant apparently overlooks is that the factual funding issue is only relevant if the trial court's interpretation of § 33 (c) is incorrect.

Article 101, § 33 (c) provides, in pertinent part:

> Whenever by statute, charter, ordinance, resolution, regulation or policy adopted thereunder, whether as part of a pension program or otherwise, any benefit or benefits are furnished employees of employers covered under §. 21 (a) (2) of this article, ... the benefit or benefits furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and Subsequent Injury Fund for any benefit under this article.

Article 101, § 21 (a) (2) employers are defined as:

> The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district, public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this act.

Appellant does not question that the City of Baltimore — the provider of the workmen's compensation benefits — and the State of Maryland — the provider of the disability retirement benefits — are each defined employers under § 21 (a) (2) or that the benefits were furnished by virtue of the employment relationship. Thus arises the determination of whether both benefit packages must be provided by the *same* governmental entity.[1]

Ultimately, we are obliged to discern and effectuate the actual purpose of the Legislature in enacting § 33 (c). We start with the language of the statute chosen by the Legislature in the sanguine belief that their words best express their intent. When, as in this case, the language is neutral and does not cut in favor of either construction, the history surrounding the statute's adoption can be used as an aid in its construction. *Frank v. Baltimore County, supra,* 284 Md. at 658.

In *Dennison v. Head Construction Company, et al.,* — Md. App. 54, 310 A.2d 458, 868 (1983), Dennison was receiving Maryland Workmen's Compensation benefits for a 1966 accidental injury. In 1976, Dennison was employed in the District of Columbia by a D.C. construction company when he was injured again. The U.S. Department of Labor Office of Workmen's Compensation found Dennison to be permanently and totally disabled. He was awarded benefits under the District of Columbia's program which were substantially

---

1. Although the State is a defined employer in this case, it is really of no significance since the benefits derived therefrom are not by reason of Tsottle's employment by the State but because the State provides retirement benefits to Baltimore City teachers under Art. 73B, § 83 (3a).

greater than the benefits payable under the Maryland statute. This Court held that, where the loss of wage earnings capacity is predicated upon the same anatomical disability, a claimant is precluded from the payment of double compensation for the same loss of wage earning capacity even when payments would be made by two separate jurisdictions. The decision was based on the common proposition running through workmen's compensation cases:

> . . . Maryland law does not permit double recovery for the same loss of wage earning capacity even if the claim involves two separate employers and two separate injuries. *Dennison, supra,* 54 Md. App. at 319.

The policy of single reimbursement is grounded in an attempt to coordinate the overall system of wage-loss protection as discussed in Larson's *Workmen's Compensation Law:*

> Once it is recognized that workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed. . . . newer legislation . . . is more carefully drawn to prevent this result. [Section 97.00.]

Larson goes on to explain:

> . . . workmen's compensation, unemployment compensation, non-occupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits. [Section 97.10.]

Article 101, § 33 gives expression to an overall systems approach to wage-loss compensation in the public sector by coordinating the various government benefits such that one wage-loss benefit is paid for one wage loss. Our real inquiry is to decide whether the purpose behind section 33's enactment will be furthered or frustrated by requiring that the same governmental entity provide both disability retirement benefits and workmen's compensation benefits before the § 33 (c) setoff applies.

Appellant advances no policy reasons as to why he should be entitled to double wage-loss benefits when he has lost but one wage. His position is neither supported by the words of the statute nor reason. Requiring the same governmental entity to provide both benefits as a condition precedent to the applicability of the section 33 setoff would fractionize the coordination of the overall system of wage-loss protection and turn social legislation into a "grab-bag of assorted unrelated benefits." Moreover, such a requirement would frustrate the Legislature's intention in enacting section 33 which, as recognized by the Court of Appeals in *Frank v. Baltimore County, supra,* 284 Md. at 661, is "to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees."

The broad proposition synthesizing the Maryland workmen's compensation cases which was recognized in the *Dennison* decision and the legislative purpose behind section 33 are consistent with the generally recognized policy of providing wage-loss benefits without redundant compensation. Both the State and the City are § 21 (a) (2) employers who provided the disability retirement and workmen's compensation benefits to appellant by virtue of his public employment. His disability retirement benefits of $1,247.48 per month greatly exceed his workmen's compensation benefits of $74.00 per week. The goal of coordinating wage-loss benefits so as to avoid double compensation is best served by holding that the disability retirement benefits fully discharge the obligation of the Mayor and City Council of

Baltimore and the Subsequent Injury Fund to pay workmen's compensation benefits.

*Judgment affirmed.*
*Costs to be paid by appellant.*